## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DIANA LYNN BLANGIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 cv 1259 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>O P I N I O N and O R D E R</u>

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 11) and Defendant's Motion for Summary Affirmance (Doc. 13). For the reasons set forth below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

### PROCEDURAL HISTORY

On September 14, 2005, Plaintiff applied for Disability Insurance Benefits (DIB) alleging a disability that began on January 10, 2003 (Tr. 81). Plaintiff's application for DIB was denied initially (Tr. 63) and upon reconsideration (Tr. 70). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). ALJ John Dodson issued an unfavorable decision on August 11, 2008 (Tr. 48). Plaintiff timely requested review. The Appeals Council denied review on June 25, 2009, rendering the ALJ's decision the final agency decision (Tr. 1). Plaintiff appealed to this Court and her arguments are centered on errors she believes the ALJ made with respect to Plaintiff's residual functional capacity to do work and in finding that there were jobs that Plaintiff could perform in light of her limitations.

## BACKGROUND

Plaintiff's date last insured was September 30, 2007, when she was 48 years old. Therefore, she must show that she was disabled prior to that date.

Plaintiff was employed as a Licensed Practical Nurse from May 16, 1994 to her alleged onset date of January 30, 2003. Plaintiff's medical conditions include Hepatitis C, vasculitis (inflammation of blood vessels), degenerative joint disease, problems with her extremities including pain and numbness, and short-term memory loss. Plaintiff asserts that her Hepatitis C and related treatments caused tiredness and vasculitis in her legs, which in turn caused memory loss and confusion.

On August 10, 2004, Plaintiff complained to a referral doctor, Dr. Thomas Brander, of a rash on her legs that had recurred 8 times over the previous year. (Plaintiff's primary doctor is Travis Swink). Dr. Brander suspected leukecytoclastic vasculitis that may be related to an infection of Hepatitis C. Dr. Brander's notes do not reveal any particular complaints of pain or limitations related to the condition. Plaintiff was referred to Dr. Mark Getz. However, she was initially seen by a nurse, Cyndee Dickinson, in Dr. Getz's office on September 19, 2005. Ms. Dickinson noted that Plaintiff complained of burning in the ankles and legs, swelling and morning stiffness. She complained of constant pain (which ranged from 4 to 10 on a 10 point scale), however, the pain would resolve for days or up to two weeks. She reported smoking 1 to 1.5 packs of cigarettes per day, limited alcohol use, and exercising on a treadmill with 5 pound weights. Upon examination, Ms. Dickinson found that Plaintiff was not in acute distress, no "reproducible tenderness or lack of range of

motion or deformities present, in her upper body. No swelling or tenderness in her ankles and toes and only "slightly decreased flexion and extension" in her ankles. Ms. Dickinson suggested no medications and a follow up. A month later, Dr. Getz noted that Plaintiff complained of burning pain in her legs and stiffness in the morning but no joint swelling or tenderness. Her vasculitis was being treated with steroids. The record does not reveal any other specific complaints related to her vasculitis (nor has Plaintiff pointed to any part of the medical record that would reveal any additional complaints to treating physicians related to this condition). The Court notes that throughout 2004, Plaintiff's complaints regarding the rash on her legs (which was diagnosed as vasculitis in 2005) appear cosmetic in nature (i.e. equated to a skin condition requiring dermatological care) and not related to any pain, swelling, or other condition in her legs.

In order to treat her Hepatitis C, Plaintiff started a form of chemotherapy in February, 2006. 4 weeks into the 48 week treatment, Plaintiff complained to Ms. Joanne Gartman[1] of fatigue, body aches, forgetfulness, insomnia, depression, and stabbing pains in her chest. A physical examination was unremarkable. However, her side-effects were noted to be "severe" and her doctor approved her travel to and from Texas so that she could live with her daughter in order to alleviate her depression and for support while on therapy. Complaints of depression occurred throughout 2006 although there does not appear to be any other significant or on-

---

[1] This provider has an acronym after her name of "PA-C." It is unclear to the Court what this acronym stands for and neither party has provided clarification. The Court assumes that she is some sort of nurse or perhaps a physician's assistant as there is no "M.D." or "D.O" listed after her name which would indicate that she is a doctor.

3

going complaints during the year. Physical examinations conducted throughout 2006 were unremarkable. On September 26, 2006, Plaintiff complained of short term memory loss and Dr. Herman J. Dick noted that an MRI of the brain showed "white matter lesion which was nonspecific." Dr. Dick gave a clinical impression of "mild cognitive dysfunction." In early 2007, Plaintiff's complaints regarding her Hepatitis C treatment included fatigue. The treatment ended on January 6, 2007. At a March 6, 2007 follow-up with Ms. Gartman, Plaintiff indicated that "she is feeling much better and almost all of her side effects have subsided with an exception to her neurological symptoms." She also noted that her forgetfulness is "improving." Ms. Gartman reports that her treatment was successful and that side effects from the treatment have "dramatically improved."

In 2003, Plaintiff complained of right shoulder pain. In August, 2003, she was prescribed physical therapy and stretching exercises; however, Plaintiff did not follow through with physical therapy. Plaintiff's chief complaints in 2004 were back pain and left shoulder pain. Plaintiff had surgery on her left shoulder in early 2006. After the surgery, she continued having left shoulder pain; by February 10, 2006, however, she was "doing much better" although she still had "some discomfort." She was encouraged to "continue range of motion and full activity." There is no evidence in the record that Plaintiff underwent back surgery, it was treated with injected epidural pain medication (which provided relief), and the records reveal that her back condition was due to degenerative changes.

A Residual Functional Capacity Assessment (RFC) was performed by agency doctors on January 24, 2005. It noted exertional limitations (lifting 50 pounds

occasionally, 25 pounds frequently, stand /walk for 6 hours a day).  The only postural limitation was no climbing on ladders, ropes, or scaffolds.  Overhead reaching was limited due to shoulder impingement and there were no other remarkable limitations noted.  In the "comments" section, the doctor noted full range of motion, standing, and walking notwithstanding the pain Plaintiff reported and that Plaintiff could perform a medium level of work.

A "Mini-Mental State Examination" was performed in December, 2007. Plaintiff scored 28 out of 30 which revealed only mild cognitive dysfunction.

At the hearing, Plaintiff testified along with a vocational expert (VE), Mr. Gustusen.  She stated that she continued working until the Fall or early Winter of 2005 and that she is currently on a medical leave of absence (although, it appears Plaintiff may have some confusion as to this date and time period).  She stopped working because of lower back pain, cervical pain, and a frozen shoulder.  Plaintiff states that she has chronic pain in her neck and lower back, that she has pain in her legs and stiffness in her knees allowing with pain and swelling in her ankles. She describes her neck pain as a constant dull ache that sharpens if she lifts something heavy (more than 20 pounds)or uses her arms too much.  Her lower back pain is caused by sitting too long.  It causes sharp pain that radiates to her legs requiring her to get up and walk around every 20 minutes.  She also has pain in her legs from the knees down, constant stiffness in the knees and ankles, and a stabbing pain.  She states that "some days if just feels like I'm walking on broken legs."  She does not use a walker or other assistive device.  She takes Vicodin and Norco for pain, Flexeril as a muscle relaxer, and Trazadone to help her sleep.  She

indicates that the Vicodin controls the pain a "majority of the time." She noted that she has brain lesions that affect her short term memory and that these problems developed halfway through her treatment for Hepatitis C.

With respect to her activities, Plaintiff states that she stays home for the most part and cares for her two dogs. She watches TV and reads. She makes breakfast but eats dinner at her daughter's house 4 nights out of 7. Most of her cooking involves the microwave because she has burned food on the stove. She plays board games with her grandson who stays overnight with her on occasion. She occasionally goes to church but doesn't drive much because she has gotten lost before. She walks her dogs in the back yard. Her family helps with taking pills and her daughter helps her with her checkbook. She does light housekeeping.

The VE testified that Plaintiff had the past relevant work as a licensed practical nurse, a skilled position with medium physical exertional requirements. The VE was given the following hypothetical: an individual who could lift no more than 15 pounds frequently, could only reach overhead occasionally, and could not climb ramps, ladders, or scaffolds. The VE testified that there would be semi-skilled clerical positions like receptionist information clerks, where there are 4, 282 positions at the light level and 30,000 at the sedentary level, and general office clerks, where there are 25,000 positions at the light level and 42,000 at the sedentary level. These clerical jobs would be ruled out if Plaintiff was limited to 1 and 2 step jobs; however, there would be light manufacturing jobs available like packaging and filling machine operators (6,000 light positions and 360 sedentary

positions) and production work (10,000 light positions and 1,800 sedentary positions) and packing work ( 20,000 light positions and 1,900 sedentary positions).

ALJ Dodson found that none of Plaintiff's impairments or combinations of impairments meet or equals the Listings. He went on to find that Plaintiff retained the residual functional capacity to perform light work except that she cannot lift more than 15 pounds frequently, she cannot climb ramps, ladders, ropes or scaffolds, she can only reach overhead occasionally, and she is limited to 1 to 2 step tasks. The ALJ noted that Plaintiff's Hepatitis C treatment was successful and that side effects subsided, except for the neurological symptoms, by March 6, 2007. The ALJ also noted that Plaintiff's back condition included mild degenerative changes, that she had various surgery on her shoulders and that her neck surgery results were very good. With respect to her memory problems, the ALJ noted that Plaintiff scored a 28 out of 30 on a Mini-Mental State Examination which indicated only mild cognitive impairments.

In evaluating Plaintiff's credibility, the ALJ stated that while Plaintiff's conditions are likely to cause "a certain amount of pain," the record reveals no significant problems with range of motion, motor weakness, or reflex abnormalities. Plaintiff's shoulder and neck surgeries were generally successful and resulted in only residual pain which resolved or is controlled with medication. Her vasculitis is "under control" and her Hepatitis C was treated successfully with chemotherapy. Finally, the ALJ has noted that no doctor has indicated that Plaintiff is totally disabled. In light of these conclusions, the ALJ found that Plaintiff retained the RFC to perform light work and that significant jobs existed in the national economy.

# DISCUSSION

## I. Legal Standard

To be entitled to disability benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made to decide whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. §§ 404.1520(a)(i), 416.920(a)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. §§ 404.1520(a)(iii), 416.920(a)(iii). If the claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the elements on the list are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv). If the claimant does not qualify under one of the listed impairments,

the Commissioner proceeds to the fourth and fifth steps. At the fourth step, the claimant's RFC is evaluated to determine whether the claimant can pursue his past work. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv). If he cannot, then, at step five, the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The claimant has the burden to prove disability through step four of the analysis, i.e., he must demonstrate an impairment that is of sufficient severity to preclude him from pursuing his past work. *McNeil*, 614 F.2d at 145. However, once the claimant shows an inability to perform his past work, the burden shifts to the Commissioner, at step five, to show the claimant is able to engage in some other type of substantial gainful employment. *Id*.

## II. Analysis

Plaintiff first argues that the ALJ erred "in not considering the numerous restrictions eroding her ability to do any significant work." Plaintiff argues that these restrictions related to her Hepatitis C treatment and that "few people are able to work through Hepatitis treatment." Plaintiff offers no support for this conclusion. Plaintiff further argues that the ALJ erred in "not giving her a closed

9

period for her disability" that would have extended her insured status to 2009. This argument also is offered with no supporting authority. Finally Plaintiff offers only a scant and undeveloped argument that her vasculitis was not appropriately considered. For this reason alone, the arguments are without merit.

The ALJ's decision is supported by substantial evidence. While the record does contain evidence that the Hepatitis C treatment did produce severe side-effects, there is no evidence in the record that these side effects necessarily would have prevented Plaintiff from engaging in substantial gainful activity. Physical examinations conducted throughout the course of treatment were unremarkable. During the hearing, Plaintiff did not attribute the side effects of the Hepatitis C treatment to any on-going limitations except with respect to her memory loss. The one record that Plaintiff points to, the record of March 2, 2006 which was made 4 weeks into the 48 week treatment cycle, shows that Plaintiff's side-effects were treated with medication and that she was cleared to travel to and from Texas every four weeks. Plaintiff points to no other record that the ALJ ignored or failed to consider. The only other record that Plaintiff points to as to the disabling effects of the treatment is an undated "Disability Report" wherein Plaintiff states that she had to move in with her sister, at some unspecified time, because of "confusion and memory loss." The documents does not reflect when she moved in with her sister (that is whether it occurred prior to or after her date last insured) and it presumably could only have occurred after the half way mark of Plaintiff's Hepatitis C treatment (because that is the first time that she complained of memory loss).

With respect to the vasculitis, as indicated above, Plaintiff's argument is undeveloped. In any event, physical examinations during the relevant time period revealed no swelling or limited range of motion with respect to Plaintiff's knees or ankles. There is no suggestion in the record that the treatment prescribed, steroids, was not effective. And, Plaintiff does not challenge the ALJ's finding that Plaintiff's complaints and statements of limitations are not fully credible in light of the medical evidence. Plaintiff has failed to meet her burden of showing that the ALJ erred in finding that the medical evidence does not support a finding of total disability.

Plaintiff's next set of arguments relate to the vocational expert's testimony. Plaintiff's argument is difficult to follow. Plaintiff appears to be asserting that the VE's testimony is unsupported by the DOT, the Dictionary of Occupational Titles, and that the ALJ erred in relying on his opinion. Plaintiff also argues that the ALJ failed to consider limitations on Plaintiff's ability to set and stand. As to this last argument, Plaintiff only cites to her testimony to support limitations in sitting and standing – evidence that the ALJ found to be not fully credible. She points to no medical evidence to support this conclusion. *Simila v. Astrue*, 573 F.3d 503, 520-521 (7th Cir. 2009) (the ALJ need only include limitations that are supported by the record). Therefore, this argument is without merit.

During the hearing, the VE testified that a "light" level of work indicated that a person could life 20 pounds occasionally, but that the lessened the numbers of jobs available to account to the finding that Plaintiff could only lift 15 pounds occasionally. When questioned by Plaintiff, the VE provided examples of particular

jobs, as listed in the DOT. In doing so, however, the VE indicated that a number of the jobs do not exist anymore and that he may be citing to jobs that do not exist. The VE nonetheless testified that his testimony is consistent with the DOT. Plaintiff takes issue, in particular with the VE's reliance and citation to "leaf tier" jobs and "Bottling-line attendant" jobs.

The DOT is a tool used by a VE to provide titles and numbers of positions that exist in the national economy. The ALJ is entitled to rely on the VE's expertise in determining whether there are substantial jobs in economy that Plaintiff is capable of performing. In *Donahue v. Barnhart*, the Seventh Circuit Court of Appeals stated that "when no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the dictionary." 279 F.3d 441, 446-447 (7th Cir. 2002). In this case, the Plaintiff acted the VE as an expert and did not question his findings at the hearing. "Raising a discrepancy only after the hearing . . . is too late." *Id*. The VE testified as to the number of jobs that were available but noted that the specific job classifications contained in the DOT may be inaccurate or may represent unavailable jobs. In light of the VE's uncontested testimony as to the general number of jobs in the national economy that could be performed by Plaintiff in light of her limitations (and notwithstanding testimony that some specific occupations may not exist), the failure of Plaintiff to challenge the VE's testimony at the time of the hearing, and evidence that the VE was testifying consistently with the DOT, the Court cannot find that there was an "apparent" and obvious conflict

that required further exploration by the ALJ. *See e.g. Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 11) is DENIED and Defendant's Motion for Summary Affirmance (Doc. 13) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED

Entered this <u>31st</u> day of March, 2010

<u>    s/ Joe B. McDade    </u>
JOE BILLY MCDADE
Senior United States District Judge
